Me. Justice Westcott,
dissenting, delivered the following opinion:
Not differing with the conclusions of the court as to the first and second grounds of demurrer to the alternative writ of mandamus in this case, I say nothing as to the matters therein set up.
Differing, as I do, from its conclusions as well as its reasoning upon the third ground of demurrer, a brief statement of the case is necessary to enable one to appreciate the exact question presented by that ground of demurrer.
This is. a proceeding by mandamus seeking to control the Board of’ -State Canvassers in the matter of their canvas of .votes cast at an election for Representative from the Second District of Blonda in the 46th Congress of the United States, the relator being a candidate at said election.
In the canvass of votes by the Board of State Canvassers cast in the county of Madison, one of the counties composing the said Congressional District for said Representative in the 46th Congress of the United States, the alternative writ alleges that the State Board omitted and failed to coui).t the votes returned by the board of county canvassers for that county. It admits the fact also that said return of the county board did not embrace the votes actually cast at district number four in said county, the relator alleging upon information and belief that at said district 186 votes were cast for him, and 129 votes were cast for Noble A. Hull, who was, with himself, a candidate for said position. The .relator avers also that the return from the county of Madison embraced all the votes cast for said office in the county, ns shown by the returns on file in the offices of the county judge and clerk, and that no return from the 4th district was before them. The demurrer admits these facts. The question involvéd, therefore, is whether under the law the Board of State Canvassers should count a county return, which,it is admitted,does not embrace the actual vote cast at the election in the county by .315 votes, an entire precinct in a county; it being likewise admitted that it does embrace all the votes of precincts or districts which were returned to the clerk and county judge. To this question I- address myself.
The first question which arises here in connection with the general question as-stated is, did the State Board have the right to ascertain this fact as to the actual vote cast at the election, outside of what appeared on the face of this return? The alternative writ to which this demurrer is interposed alleges as facts that’ the return from Madison county omits this precinct, is regular upon its face, and is the bona fide act of the county board. If the State Board is
*17 limited in its enquiries to 'the face of such return, then the fact of omission of this precinct not thus appearing in this case, and the board having no power to go beyond its face to make such enquiry, the necessary legal result would be that the act of the board was-unauthorized by law; that they should have counted the return as it appeared, and the result would be that the peremptory writ should be granted. Such was the view of relator's counsel in the case of Drew vs. Board of State Canvassers, (16 Fla., 22, 34, 35,) if I understand the pleadings and briefs therein. In my judgment, this question was there directly presented for consideration, and was determined. As that opinion, however, was written in a few hours, and for that reason was necessarily brief, although I think in no respect erroneous, I will not content myself with a simple narration of the conclusions there stated. Justice to myself, and a due regard for the importance of the principle involved, justifies its more elaborate discussion. I shall discuss this question, first, • as though it was res integra; shall, in the second place, show what the court determined in that case in reference to this question; and in the third place shall show that the ques-1 tion was presented by the pleadings in that case for determination, and that the expression of opinion there as to this point was not an obiter dictum, but was the decision of a question plainly involved.
The statute controlling the State Canvassing Board, after providing for its organization, directs that it shall “proceed to canvass the returns of said election, and determine and declare who shall have been elected to any such office, or , as such member, as shown by such returns. If-any such returns shall be shown or shall appear to be so irregular, fal=e or fraudulent that the board shall be unable to determine the true vote for any such officer or member, they shall so certify, and shall not include such return in their determination and declaration, and: the Secretary of-State shall preserve and file in his office all such returns, together with such other documents and papers as may have been received by him or by said Board of Canvassers. The said board shall make and sign a certificate, containing in words and figures written at .full length, the whole number of votes given for each office, the number of votes given for each persoh for. each office and for member of the Legislature, and therein declare the result.” It needs no argument to show that, under the statute, the basis of the determina- ' tion and declaration by the board as to who shall have been elected to any office must be the returns; and that their action must correspond to 'what is shown by the returns. When, however, such returns shall be shown or shall appear to be so irregular, false or fraudulent that the board shall be unable to determine the true vote for any such officer or member, they shall so certify, and shall not include such return in their determination. If this clause be a grant of power in conformity to organic law, then in the event it is shown or appears that a county return is irregular or false or fraudulent, within the meaning of this section, there certainly can be no doubt that -the State Board must not count such return. Again, as the statute provides that, “the Secretary of State shall preserve and file in his office all such returns,toyeth&rwithsuch other documents and 'papers as may lime been received by him or by said Board of Canvassers,” it' is equally clear that the papers and documents which may be considered by the board in making their determination are not the returns alone, (which, under the law, are required to be sent by the county canvassers to the Governor and Secretary of State,) but in addition to the returns, are such other papers as may have been received by ike Secretary of State and the board. Unless it can be maintained that returns are not only returns, but returns and papers and documents other than returns, and I presume no sane man would endeavor to establish such a proposition, then, under this statute, the board, in determining this false, irregular or fraudulent character of returns^ may look beyond the face of such returns, and examine and receive papers and documents other than returns. Again, under the law, the county returns are sent alone to the Governor and Secretary of State. They are not sent directly to the board, and yet the board are authorized to receive papers themselves, for the law directs what disposition is to be made of such papers when received.
Again, the law, defining the duties of the county canvassers, provides that the canvass they are- to make, “shall be made solely and entirely from the returns of the precinct inspectors in each election district, filed by them, with the County Judge and Clerk of the.Circuit Court respectively, and in no case shall the board of county canvassers change or vary in any manner the number of votes cast for the candidates respectively, at any of the polling places or precincts in the county, as shown by the returns of the inspectors of such polling places or precincts. They shall compile the result of the election as shown by said inspectors' returns, and shall then make and sign duplicate certificates, containing in words and figures written at full length, the whole number of votes given for each office, the names of the persons for whom such votes were given for such office, and the number of votes given to each person for such office.” The law then provides that one of such certificates shall be sent to the Governor and one to the Secretary of State. This court, in The State vs. The Board of Canvassers of Alachua County, (17 Fla.,) determined, but a few weeks since, that under this statute the duties of the county board were solely ministerial, and that, in making up their canvass, they were to compute the inspectors' returns and nothing else. In view of the very exact, precise and restrictive language of this statute, and the opinion of this court interpreting it, in the case referred to, it is.clear that the law prohibits the county board fróm placing upon the face of its return to the Governor and Secretary of State anything except what is shown “sblely and entirely” from the returns of the precinct inspectors, in each election district, I and “in no case” shall they change or vary “in any manner” the number of votes cast, as shown by the returns of the inspectors of such precinct. If it is a return from a precinct, made by the inspectors of such precinct, then, no matter how false or fraudulent it may be as to the vote cast, and independent of the question whether it contained more or less than the votes cast, it must be canvassed and counted by the county board. Not only is this true, but, in addition to all this, there may be a consideration for the act, and yet the return must be counted. This is the effect of the decision of this court in the case of The State ex rel. H. Bisbee, Jr., vs. The Board of County Canvassers of Alachua County, lately. decided by this court. This being so, then, if the county board strictly performs its duty, and restricts itself to placing upon the face of a return that only which the law authorizes it to place there, a return made to the Secretary of State can never, and should never, ; show upon its face either falsehood or fraud, for, to place anything of that character upon its face would not only he an irregularity, but a clear, plain violation of the law which defines theiT duties in this very particular, and the act of the Legislature, which makes it the duty of the State Board to have, for the basis of its certificate, returns not shown or not appearing to be false or fraudulent, becomes nothing, a mere vox et preterea nihil in all cases where another board of canvassers have complied with the law defining theiT duties, this, too, notwithstanding the. returns, when considered with reference to the vote actually cast at the election, may he shown, otherwise than by their face, to be both a falsehood and a fraud. Besides, any writing made upon the face of -a return by the county board, otit- *18 side and in violation of their power and duty under the law is entitled to no more consideration than such an act done by an individual. Being beyond official authority, it cannot be treated as an official action. The adoption of this view brings us necessarily to the conclusion, that the Legislature authorizes the State Board to act alone upon returns not shown to be false, and, at the same time, limits them in their investigation of the fact of falsehood to an official paper, which, if legal and in proper form, can never establish the fact of falsehood. The signification of the words, “shown or shall appear,” in this section, are to be determined, as in every other case of like investigation, by the nature of the thing which is to be shown or to appear.' That which is to be shown here is the irregularity, the falsehood or fraudulent character of a return, purporting, upon its face, to contain the votes cast at a general election held in a county; 'and as a county return may be legal and formal and regular in its character, and yet false as to the votes cast or given in a county, (the matter of inquiry,) the nature of the thing to be shown or to appear necessarily excludes and prevents such interpretation or construction of the statute as limits the enquiry to what is shown or appears by the return. The reasonable, the fair, the simple interpretation of the language of this statute is entirely in conflict with this view. It is a fundamental and elementary rule of construction, prevailing in all courts in England and America, that when this is the case, the duly of a court is to declare the plain intent, the clear meaning of the statute,'unless it is shown that the literal and simple construction of the language employed is clearly not within the intention of the Legislature, and that something else was.
Here, as I have demonstrated, the view that the State Board is restricted to the county return in determining its falsehood, is directly opposed to the intention of the Leg.islature, because the fact of falsehood cannot legally and properly appear therefrom in any case, and the. Legislature contemplated that it might be shown or appear, if it existed. To my mind, therefore, this construction of the statute is clearly wrong. It is useless, in this connection, for those who advocate this rule, to cite decisions of other State courts to the effect that under their statutes a State Board is restricted in its enquiries to the genuineness of the return before them. The statutes they are construing- are essentially different from ours. They authorize no inquiry as to the falsity or truth of a return when it speaks as to the votes cast. Our statute does authorize this specific inquiry, and to adopt the decisions referred to would be an usurpation of legislative functions by a judicial tribunal, for the act would be simply the repeal of a statute under the forms of judicial proceedings.
This view that the State Board could determine the falsity of a return by inquiry aliunde its face, is sustained by what is said in the case of Drew vs. State Canvassing Board, (16 Fla., 45.) This court there said: “The clear effect of this clause” (meaning the clause regulating the canvass of returns by the State Board) “is that a return of the character named” (meaning thereby the irregular, false or fraudulent character mentioned in the statute,) “shall not be included in the determination and declaration of the board, and that it has power to determine the bona fide cliaracter-of the returns dehors their face.” The court in that case also said, when interpreting section 5 of Article XIY. of the Constitution, that “the necessary conclusion is that said officers may be authorized by the Legislature to inquire into the truth or falsity of the returns sent to them, and if upon such inquiry they be satisfied that the return does not show the vote actually cast at the election, but that it states a falsehood as to that foot, they may lay it aside and refuse to count the return, as is provided in the act of 1872.”
This question as to enquiry beyond the face of the returns was involved in the determination of the demurrer of the relator to the answer of the respondents in that case. This answer alleged as to the return from one of the counties that it did not “include the vote cast in said county as it appeared on the face of the return, upon the ground that it appeared in evidence that there was such irregularity and fraud in the conduct of the election in said county in, receiving the votes of persons not registered, and there being no registration list fumishd inspectors and no designation of voting places, and no notice of election, that said board could not ascertain the true vote.” (16 Fla., 31,) Allegations as to the reception of evidence offered by both sides, and enquiry beyond the face of the return, are also found in other portions of the answer to which this demurrer was interposed. (16 Fla., 27.) The alternative writ of the relator himself stated that the board had received “ex-parte affidavits to impeach the returns,” that they had “exceeded their powers,” and that “they should have confined their canvass of said returns” to what was shown or appeared on the face of said returns.” (16 Fla., 22.) A demurrer to such an answer preceded by such an alternative writ and sustained by briefs of counsel discussing this very point, certainly presented it for the consideration of the court, and an announcement by the court that it did not think the pleadings involved the point could have been well met by an intelligent bar with a smile, indicative of an emotion much less complimentary in its character than an expression of surprise.
My conclusion, therefore, as to this point is, that the State Board was not obliged to accept the face of the returns, and that the Vnatter of its falsity could be ascertained dehors; its face that such is the plain meaning of the statute as well as of the decision in the case reported in 16 Fla, The alternative writ here does not state the method of inquiry by which the board ascertained the fact that 315 votes (the vote cast at one precinct) were not embraced in this return, and, therefore, no question as to the legality of the method adopted, whatever it may have been, to ascertain this fact, is presented.
• Having thus shown that the State Board has the authority to look beyond the face of the return to ascertain whether it states the truth, and the alternative writ in this case setting up and admitting the fact as known and ascertained by the board that the entire vote at one precinct in the county (315 in number) was not counted, the only remaining question arising upon this demurrer which it is essential to consider is, was this a false return within the meaning of the statute? If it was, then the State Board properly laid it aside and did not count it'. If it was not a false return, (there being no question as to regularity or fraud,) then they should have counted it.
I shall first consider this question in reference to the case of Drew, (16 Fla.,) and shall, in the second place, examine the opinion of the court now rendered and compare it. with what was decided in that case. In the case of The State ex rel. Geo. F. Drew, the respondents alleged in their original answer that votes were added in • some cases to those embraced in county returns, and that in other cases votes were deducted from those returned, on the ground that the return did not represént the true vote, meaning thereby the legal vote of the county as distinct from the actual vote cast. These answers being entirely too general in their character, upon motion of the relator the court required them to be amended so as to set forth the specific grounds of rejection or addition in each case. In the answers, original and amended, the fact appeared that the Board claimed and exercised pure judicial powers, that is, a right to determine whether a vote cast was a legal vote, and other powers of like character, upon the ground that such ille *19 gality rendered the 'return irregular, false or fraudulent, within the meaning of the statute, and\ that the words “true vote” meant the legal vote. To these • answers, original and amended, the relator demurred. Admitting that a ease was made by the alternative writ, the question presented was, do the facts set up in such answers, original and amended, constitute in law a reply to the alternative writ? Did they show a performance of their legal duty ? What were these facts? In the first place there was, as against a regular return, the determination that a number of votes embraced therein were illegal, and that an election was illegal. This was the exercise of general judicial 'power, a power which related to the ultimate final right to the office, as contra-distinguished from the right to a certificate which, under the law, was simply to constitute "prima facie evidence of election;” a thing no more final in its character than a certificate of an election granted by the Secretary of State to a person who appears from the canvass of returns from a county to have been elected to the Legislature. This question thus clearly presented was disposed of by the court in this language: “The general nature of the power given by the statute is ministerial, and that to the extent that any strictly and purely judicial power is granted, such power, cannot exist.” (16 Fla., 44.) It is unnecessary to repeat here the grounds upon which this conclusion was based. I do not understand the court’ to differ from me in this view, and it is unnecessary to say more. The next question presented in the case of Drew was the signification of the words “true vote” and of the words “irregular, false and fraiidulent,” used in “connection” with the words “true vote.” The words “true vote” and the words “irregular, false and fraudulent” in “connection” therewith, are found in the answer as to Manatee ocunty. Like words are used in the answer as to Jackson, Hamilton and Monroe, (16 Fla., 27,) and under • the demurrer these questions were properly presented. The court, in disposing of them, said: “While the general powers of the board are thus limited to and by the returns, still as to these returns the statute provides that 'if any such returns shall be shown or shall appear to be so irregular, false or fraudulent that the board shall be unable to determine the true vote for any officer or member, they shall so certify, and shall not include such return in their determination and declaration; and the Secretary of State shall preserve and file in his office all such returns, together with such other documents and papers as may have been received ’by him or by said Board of Canvassers/ The words True vote’ here indicate the vote actually cast, as distinct from the legal vote. This follows, first, from the clear general duty of the canvassers, which is to ascertain and certify the Totes given* for each person for each office, and, second, because to determine whether a vote cast is a legal vote is beyond the power of this board/* Thus is defined the words “true vote.” The court then say, “as to the words 'irregular, false and fraudulent* in this 'connection,*** that is in connection with the words “true vote” as used 'in the answer, 16 Fla., 27, “their definition is not required by the pleadings in this case/* The court then gave a reason for this, and remark that “these respondents have not alleged that they have before them any return so irregular, false or fraudulent that they are unable to determine the actual vote cast in any county as shown by the returns.” The substance of all of which is that the court having determined that the words true vote did not indicate the legal vote but the actual vote, and the respondent’s answer having connected 'these words with the words true vote -and legal vote, he had nothing in his answer which raised any question as to their signification when used in connection with the words actual vote.
In view of all this, it-certainly cannot be doubted that this court determined in the case of the State ex rel. Drew that the false or true character of a return was to be determined with reference to “the vote actually cast ” I do not mean by this that any part of the answer of the respondents, or the alternative writ issued, set up in terms a failure of the board1 to count any return because it was false as to the actual vote cast. Ho part of the answer which was responsive to relator’s case, and to that respondents were confined, set up any such fact. "What I mean is that the pleadings, the points presented in argument, indeed everything in the case, required at our hands a decision fixing the meaning of the words “true vote,” and as it cannot be denied that the word false is used in connection with the words “true vote,” and is to be interpreted in reference thereto, then it necessarily follows, if the words true vote mean “the vote actually cast,” that the false or true character of a return must be determined with reference to the vote actually cast.
This, however, is not all that the court said in reference to this precise point in that case. The power of the Legislature under the Constitution of this State to authorize this board to enquire into the falsity of a return and to ascertain that fact by means outside of its face was questioned. While the court sustained the point made that the Legislature could not bestow general judicial power such as was involved in determining the legality of a vote cast, and such like powers, it affirmed in no uncertain language the power of the Legislature to authorize this board to “inquire into the truth or falsity of the returns sent to them.” What did this court say? Our language then was, “the constitutional provision that the officers of one department of the government are strictly forbidden to do any act or to exercise any function pertaining to any other department, unless expressly provided for in the Constitution, must be taken in connection with the provision (Sec. 5, Art. XIV,) authorizing ancf requiring the Legislature to provide for ascertaining the result from the returns of elections. This is clearly an express authority for providing that returns of elections must be received, considered and passed upon by such officers or persons as might be designated by the Legislature. And the necessary conclusion is that such officers may be authorized by the Legislature to inquire into the truth or falsity of the returns sent to them, and if upon such inquiry they be satisfied that the return does not show the vote actually cast at the election,but that it states a falsehood as to that fact, they may lay it aside, as provided in the act of 1872”
This court then said, if it said anything, in the case of the State ex rel. Drew, that the words “true vote” in this statute meant the vote actually cast. Hot only did it say this, but it also said, “if upon inquiry, they (meaning the State Board) be satisfied that the return does not show the vote actually cast at the election, but that it states a falsehood as to that fact, they may lay it aside and refuse to count the return.”
This brings us to the consideration of the present decision. What does the court now say? Does it say to the board, reject this return, as it fails to include 315 votes cast at the election in Madison county? Does it say you can go aliunde the return and inquire into this fact? Hot at all. If I understand the decision, the board must have nothing to do with the matter of votes actually cast at the election, if it appears that he return embraces less than the votes cast at the election, but embraces all the votes contained in precinct returns which were in the office of the clerk and judge when the county canvass was had and the county return made. In other words, the “fact” as to which and in reference to which the falsity of a return is to be ascertained, is not “votes actually cast at the election” was held in the Drew case, but' votes actually cast at the election, and, in addition *20 thereto, returned to the county "board. To this extent, therefore, it is clear that the court is now making new and additional requirements in order to stamp a return with the character of falsity. The board is here ordered to count a return which, under the law, should contain all the votes cast at the election in a county, when it is admitted by the relator himself, in his own pleading, that as to that fact it states a falsehood in that it fails so to do by 315 votes. A return containing only a part of the votes cast in a county is not' contemplated by the law controlling elections. The intention of the Legislature and the provisions of the statute contemplate only a return Embracing “the whole number of votes given for each office” in each county. It contemplates returns from the “inspectors in each election district.” If, as in this case, the returns from one precinct aTe not before the county board, then a case not contemplated by the Legislature arises; a case which perhaps they cannot remedy, because they can only count the returns before them without regard to their false or fraudulent character. They can only determine whether they are returns. But is it true that because the county canvassers are thus restricted in their powers by statute, that the State Board is likewise restricted, when it examines the county returns itself? Clearly not. The State Board is not controlled by the law controlling the county board. Its duties are defined by another section of the law, which gives it pdwer to determine whether that return shows the votes actually cast at the election in the county. Much is said in the opinion of the court as to a county canvass based upon votes not cast. It is said that such a return is not to be counted. This question is not involved in this case, but if it be true that the State Board must count the returns of a county, as to which the county board has performed its duty, and is limited by the action of the county board, then it seems to me this conclusion is an error, because it_ is. very clear from .the statute'regulating the power, of the county board as this court has defined it, (State of Florida vs. Board of Canvassers of Alachua county, 17 Fla.,) that this board can only enquire as to the genuineness of the return. If it is a return signed by precinct inspectors, they cannot enquire into this fact. They must count it, and if the State Board is to count whatever the county board has legally counted, then it must count such-a return. I do not mean by this ■ to express any opinion as to the law in such a case, and only state my, view if the rule mentioned controls. It is not necessary that a county return should be both false and fraudulent in its statements as to the votes cast at an election. It may.be rejected for either cause. What, however, is a fraudulent return, within the meaning of this statute, and at the same time not a false one, I have never understood. It seems to me that the legitimate legal deduction from the view now expressed by the court is that the State Board cannot go behind the county return, if it represents the .performance of their legal duty, and is not affected by some fraud on their part; and, as the county board cannot enquire whether precinct returns show more or less than the vote cast, then, according to this view, the State Board is likewise restricted in its enquiry. The subject matter for enquiry by the State Board is the votes given, the votes •.cast in the entire county. The county return purports on fits face, in all cases, to give the entire return, if it is framed in accordance with the law. This being bo, where is the •difference between a return shown to contain less than the votes cast, and one shown to contain more, if the falsehood or truth of a return is to be determined, as we said in the: Drew case, in reference to ■ “the vote actually cast at the * .election?”
The court in illustrating its position states the case of a county return embracing votes at a precinct at which some ballots had been withdrawn and destroyed because more ballots were found in the box than there were names on the poll list. This return, the court says, is precisely as false as the return from Madison county, and with the same propriety should be rejected.
If such a return as this should come before the State Board, that Board would look to its own powers to deter- ' mine whether the case of a difference between ballots found - in the box and the names on the poll list was a case for its consideration. Upon the. Board ascertaining that the remedy for such disrepancies which the law prescribed had been applied, it would necessarily conclude that it presented a case beyond its powers, and independent of the question whether such discrepancies would, under other circumstances, justify and require them to set the return aside, yet they could not apply this remedy when the law, in clear, plain and unmistakable terms, directed another to be applied, and it had been applied. The court in considering this analogy states, “yet it may be proved that these ballots were actually cast.” The law contemplates nothing of the kind. They are destroyed. When such a discrepancy occurs, the Legislature accepts the poll list as showing the number of votes actually cast by voters or persons purporting to be voters. When the ballots found do not correspond .with this list, the excess is not dignified by the law' with the standing of a vote. The law stamps this excess with a seal of condemnation, directs destruction, and nothing can be proved as to these ballots before the State or County Boards.
No such question as this, however, is involved in this case, and what I say is only in reply to the illustration made by the court. This brings me to the consideration of the last subject mentioned in the opinon which I shall discuss, the Clay county returns.
Whether I should say anything in reference to the remarks made in the opinions as to the action of the court in the case of the State ex rel. Drew vs. The State Canvassers, in the matter of the Clay county returns, has been the subject of much consideration with me. At first, as the court remarked in reference to the matter that “the returns from Madison county are not in the same condition” as the Clay county return was in the case referred to, I thought it best to say nothing. If they were not in the same condition,' then any remark in reference to the Clay county return in the case of Drew vs. The Board of State Canvassers wanot applicable to the return from Madison county here, and the opinion upon its face admitting this fact I thought suffi- • cient. But as any mention of the matter was entirely unnecessary, and the facts stated as being before the court in reference to the Clay county return in the case referred to are errn-neous, a correct statement of them as they appeared in the pleadings should be made in order that the opinions as written in the case of the State ex rel. Drew vs. The Board of State Canvassers may be shown not to be properly subject to the criticism which the last clause of the remarks made upon the subject contains.
The question before the court as to the Clay county return in that case arose upon the demurrer to the answers of the. respondents, original and as amended. The original answer made no mention of Olay county, nor did the alternative writ.. The amended answer departed * from the case made by the alternative writ. The court’s power was invoked, by it. to correct no alleged error as to Clay county. A reply setting up such action constituted no answer to the alternative writ. The relator, so far as the case made by his petition and the alternative writ of the court disclosed,made no complaint of the board’s action as to this return. A reply in this case slating action as to some county other than Madison, of which the relator did not complain, and which did not affect his ultimate right to the certificate, would present a like case. But counsel in the case, actu *21 ated In- a laudable purpose and wish, as was frequently expressed at the bar, to have a full adjudication upon the merits, made no such objection. Now what were the precise fads as to the Clay county return before the court upon this demurrer? 1 quote the exact language of the amended answer: “And these respondents further say, that in the Count}' of Olay twenty-nine votes were added to the vote cast for George 3?. Drew, and six votes were added to the vote cast for Marcellus L. Stearns, upon the ground that said votes had been improperly rejected by the county canvassers of the vote of said county at said election. And further in relation to the said county of Clay, that four votes cast for George P. Drew at said election were deducted, and two votes cast for Marcellus L. Stearns were deducted, upon the ground that said votes were cast by non-residents of the county.'” 16 Fla., 30.
This answer does not contain one word as to a “precinct return,” and to it the court was restricted in determining the facts as to which it was to declare the law. Therefore, no such fact was before the court. Prom the answer it would appear that the voto cast meant the vote stated on the face of the return. As a matter of course, in view of the previous opinion of the court, the State Board could not in any case add to or take from the votes named in the county return. By reference to the opinion as to the Clay county return, it will be seen that this is precisely what the court' said as to the case stated. This statement of the law was entirely correct. It is true the court, in discussing the return from Clay county, uses the words, “statement of votes by precinct inspectors,” but this by no means necessarily means a precinct return or a “certificate of the result” of an election at a precinct. Again, these words in the connection in which they are used in the opinion refer to the six votes deducted from the “votes'cast” as well as to the-35 votes added to the votes cast, and there is certainly no such thing known to the law as a precinct return of votes deducted from the vote cast at the precinct, or of votes added to the votes cast, and these were the additions and deductions made as alleged in the answer.
The criticism itself is based upon the hypothesis that it was the opinion of the court that the return from this county should not be counted. I am not aware that such ever was the opinion of the court, or that it was the opinion of any member of the court at the time the language referred to was written. I had not even seen any of the papers connected with the actions of the board. I might enter into the history of this portion of the opinion in the .case of the State ex rel. Drew vs. The State Board, but this, as well as what has been said in the opinion of the court as to the Clay county returns, and what I have been constrained to say on account of the statement of facts and the criticism referred to, is, in my judgment, all unnecessary, all outside of this case.
Thinking as I do, for the reasons before stated, that the court in commanding the State Board to count the return from Madison county is directing them to state a falsehood, within the meaning of the statute, I cannot assent to such action.
The counsel for respondents having obtained leave, upon the overruling of the demurrer, to answer over, the Secretary of State (Wm. D. Bloxham) and Comptroller (Columbus Drew), filed an answer of the effect stated in the fol-. lowing opiniop, delivered by the Chief Justice. The Attorney-General refused to join in this answer, but filed a separate statement. The certificate, annexed to this statement, is the same as that originally made by the Board of State Canvassers, in rejecting • the Madison county returns. The statement, including the certificate, is as follows:'
“The separate statement of George P. Raney, Attorney- 59 General of the State of Florida, to the alternative writ of mandamus in this case shows:
“While it is true that the papers referred to in the answer submitted by the Honorable Comptroller and Secretary of State, were before the board and were urged by counsel for the Hon. Noble A. Hull, as containing grounds sufficient in law for rejecting the return from Madison county, my own reasons for assenting, that it should be announced as the conclusion of the board that such returns should be rejected, are those stated .in the certificate hereto annexed, marked A.
“A”
MADTSON COUNTY.
• “The Supreme Court, in the case of Drew vs. the State Canvassing Board, in construing the section of the statute defining the powers and duties of this board, says: “The words, 'true vote’ indicate the votes actually cast as distinguished from the legal vote.” The Court again says that the clear -effect of the-clause, “if -any such returns shall bo shown or shall appear to be so irregular, false or fraudulent that the board shall be unable to determine the true vote for any such officer or member, they shall so certify, and shall not include such return in their determination and declaration, and the Secretary of State shall preserve and file in his office all such returns, together with such other documents and papers as may have been received by him or by said board of canvassers,” is, “that a return of the character named shall not be included in the determination and declaration of the board, and that it has power to determine the Iona fide character of the returns dehors their face.” The expression “bona fide character” here used evidently refers to the words “irregular, false or fraudulent” used in the statute. It again says, in discussing the article of the Constitution under which this section is authorized, “this is clearly an express authority for providing that returns of elections must be received, considered and passed upon by such officers and persons as might be designated by the Legislature, and the necessary conclusion is that such officers may be authorized by the Legislature to inquire into the truth or falsity of the returns sent to them, and if, upon such inquiry, they be satisfied that the return, does not show the vote actually cast at the election, but states a falsehood as to that, they may lay it aside and refuse to count the return as is provided in the act of 1872.”’ The power to lay a return aside and not include it in the determination .under such circumstances, involves the duty to so. lay it aside under the same circumstances. It is not denied that, the return from Madison county does not include any of the votes actually cast at precinct No. 4 in this county; and it is the conclusion of the board that this return does not, therefore, show the entire or true vote actually cast at the election in this county. Although it is true that the county canvassers did canvass all the precinct returns which had been received at the clerk’s or county judge’s office up to the time of making the canvass, and although there is no irregularity in the action of the county board, yet this* return docs not state, in the opinion of this board, the truth as to the actual vote cast, but comes under the condemnation of the decision of the Supreme Court. This board, therefore, determined it to be its duty not to include this return in its determination and declaration, and certifies that such return is so false that the board is unable to determine from such return ihe true vote for any officer or member, cast in said county.
The relator demurred to the answer of the Comptroller and Secretary of State, on the ground that it did not state any defence in law to the writ.
‘S. Bisbee, Jr., in pro per.
J. F. McClellan and D. S. Walker', Sr., for the Comptroller and Secretary of State.
The demurrer was argued by
The Ciiiee Justice
delivered the opinion of the court.
To the alternative writ of mandamus, the respondents, the Secretary of State and Comptroller,- say that when the returns from Madison county were under consideration before the board, certain papers “herewith filed” were also before the board; that these papers, with the admission of both parties that the returns from precinct number 4 in Madison county were missing, constituted all the evidence before the board, upon the consideration of which they came to the conclusion that the returns from Madison county should Be rejected. They further say that previous to the service of the writ in this-case, having also rejected the returns from Brevard county, they found from the returns received from the other counties that Noble A. Hull had received a majority of the votes cast, and thereupon certified that fact to the Governor, who issued to said Hull the certificate of election required by law.
The Attorney-General does not join in the plea or answer, but says that the papers referred to in the answer of the Secretary and Comptroller were before the canvassing board, and that his own reasons for rejecting returns from the county of Madison were those stated in the annexed paper, (being the certificate of the board, a copy of which is appended to the original petition for the writ of mandamus.)
The relator demurs to the several answers as insufficient. The plea or answer of the Secretary of State and the Comptroller contains on its face no averment that the returns from Madison were so irregular or false that they could not determine the true vote of the county, therefrom.
We have, therefore, examined the exhibits for the purpose of ascertaining whether they gave any sufficient reason for the refusal to canvass the Madison returns, treating them as a substantial part of the plea.
These papers are sundry protests of citizens, counsel and candidates against the canvassing of the returns for vigorous reasons; a notice by Mr. Bisbee of his intention to apply for a writ of mandamus; an affidavit of Judge Witherspoon giving his reasons for not signing a statement of facts as to the canvass in Madison; two copies of the returns of that county in due form, to one of which is attached a certificate signed by the cleric and a justice- of the peace, who were members of the Board of County Canvassers, giving certain facts as to the condition of the returns canvassed •by them, and which they detailed as follows: That in the returns from Madison District No. X the certificate was signed by only two of the inspectors, the other having refused to sign, by the advice of a citizen; that there were no returns from District No. 4; that from District No. 5 no oaths of inspectors or poll-lists were sent in, and the returns were brought in by one of the inspectors unsealed, and were enveloped aiid sealed up by him with an envelope furnished him by the cleric; that from District No. 6 the returns were brought in unsealed and the inspector sealed them in the clerk’s office; and that from District No. 7 a certificate was given by the inspectors that there were ten more votes on the tally-sheet and in the box than there were names on the poll-list. They then certify that owing to the missing return they cannot give the true vote of the county, but that they had “counted all the returns that had come in, even with the irregularities, because we thought the law required us to do so.”
Treating these papers and certificates as facts pleaded, they show no reason why the precinct returns mentioned should not have been included in the' county canvass, or why the county return should be omitted from the State canvass.
A certificate.signed by a majority of the inspectors is a valid return. The omission of one to perform his duty is not even an irregularity in the return.
That no return came in from one precinct is not a reason for disfranchising {he whole county, as we have determined upon the previous demurrer.
The absence from the clerk’s office, or the omission to send to that office the oaths of inspectors or the poll-lists, may render the inspectors liable for a violation of duty, but the county board very properly performed their duties without them. They are no aid to the canvassers in ascertaining from the return the votes cast. We have so held on a previous occasion.
The law directing the inspectors to seal up the returns before sending them to the county board is directory only, and the omission to do so only affords opportunity for tampering with them if the inspectors place them in improper hands. If the county board found evidences of alteration, they might, and it would be their duty, to investigate the matter and cause the wrong doer to be punished. If they have no evidence of such forgery, they should count the return, even if it was never shrouded in a sealed wrapper.
The certificate of the inspectors of No. 7 that there were ten more votes on the tally-list and in the box than the names on the clerk’s list, is far from being an allegation that votes not actually cast were counted, or that the canvass by the county board was irregular in any respect, or that it states a falsehood. Such certificate of the inspectors cannot be received by the county board to impeach the •return.
The conduct of the county board of Madison, in disre-1 garding irregularities which are not material and not affecting the result of the election, is deserving of commendation.
We are unable to find in the pleadings or papers submitted, any fact which impeaches in any degree -the returns made by the canvassing board of that county, and therefore it is considered that the plea is not well founded.
As to that part of the plea which alleges that the canvassing board have, by refusing to count some county returns ascertained, and declared a result adverse to the relator, the very ground upon which he seeks this- remedy, the question has been decided by this court on more than one occasion, and the plea held not to be ‘a bar or ground for abatement of the writ.
The action of the Governor in the premises is not involved in this- proceeding. The question here is, whether ■ the relator is entitled to a legal counting of the votes cast and duly returned and a declaration of the fact, as required by law.
The relator must have judgment upon the demurrer.
Demurrer sustained.